[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action arising out of a motor vehicle accident that occurred on January 17, 1996, in which an employee, James Pendergast, of the plaintiff, J.E.P., Inc., d.b.a. Delta Bulk Transport, was involved in a collision with the defendant, Nancy Ferrara, while Pendergast was driving a vehicle owned by the co-plaintiff, J.P. Noonan Transportation, Inc. Without initiating suit, on August 29, 1997, Pendergast settled his claim against Ferrara for $20,000, which was the limit on her insurance policy. (See Affidavit of Richard Douglas, claim manager for Allstate Insurance.) The plaintiffs were not part of this settlement, nor did they agree to it. The affidavit of Robert Dupuis, safety director for the plaintiffs, reveals that the plaintiffs have paid $28,045.30 to Pendergast in workers' compensation benefits and that Pendergast's claim still remains open. In addition, Dupuis acknowledges that the plaintiffs have recovered $9,758.95 with respect to Pendergast's workers' compensation claim, leaving an unpaid balance of $18,236.36. Pursuant to General Statutes § 31-293, the plaintiffs initiated this suit by service of process upon the defendant on January 14, 1998, seeking recovery of the workers' compensation benefits they paid to Pendergast, claiming that their responsibility for those payments arose from the negligence and carelessness of the defendant. The defendant moved for summary judgment on November 21, 2000, on the ground that the plaintiffs are seeking CT Page 2633 double recovery, which is against the public policy behind the Workers' Compensation Act. Pursuant to Practice Book § 17-45, the defendant's motion is supported by a memorandum and a supporting affidavit. The plaintiffs have also provided a memorandum in support of their opposition as well as a supporting affidavit.
The defendant moves on the ground that the plaintiffs are seeking double recovery because they have already received reimbursements for the workers' compensation benefits they paid. Specifically, the defendant argues that "Pendergast reimbursed his employer [for the benefits he received] thereby actually receiving no money. Despite recouping its losses, the plaintiff has commenced this action for the full amount of benefits paid to its employee. Success in such an action would allow the plaintiff double recovery in violation of the public policy behind the Workers' Compensation Act." (Defendant's Brief, p. 4.[1])
The plaintiffs argue that they are not seeking to recover double damages, but are merely seeking to recover the amounts in excess of the $9,758.95 that they have already recovered. Specifically, the plaintiffs argue that they "are entitled to maintain this negligence action with respect to the unpaid balance of $18,286.35." (Plaintiffs' Brief, p. 3.) Upon review of the case law and legislative history surrounding General Statutes § 31-293 (a), the court finds no reason to bar the plaintiffs from maintaining an action against the defendant in order to recover, in toto, the workers' compensation benefits they paid to Pendergast.
The "employer's right to obtain reimbursement from a third party tortfeasor is a statutory claim that is derived in its entirety from [General Statutes] § 31-293 (a)." (Internal quotation marks omitted.)Libby v. Goodwin Pontiac-GMC Truck, Inc., 241 Conn. 170, 177, 695 A.2d 1036
(1997). General Statutes 31-293 (a), provides, in pertinent part: "When any injury . . . has been sustained under circumstances creating in a person other than an employer . . . a legal liability to pay damages for the injury . . . any employer . . . having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee."
A claim brought by an employer pursuant to General Statutes § 31-293
"allows an employer that has paid or become obligated to pay compensation to the injured employee under the Workers' Compensation Act to take action against a third person who is legally liable to pay damages for an injury to an employee. . . .[The Supreme Court has] stated that the employer's right of action under § 31-293 is separate and distinct CT Page 2634 from the employee's right, noting that it is a right vested in the employer exclusively; it is not the right of the employee." (Citations omitted; internal quotation marks omitted.) Doucette v. Pomes,247 Conn. 442, 468, 724 A.2d 481 (1999).
The legislative history of General Statutes § 31-293 also provides support for the proposition that the claim of the employee and the employer are two separate claims, and a settlement by the employee does not bar recovery by the employer. "[C]hapter 138, part B, § 6, of the 1913 Public Acts provided in relevant part: When any injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto . . . any employer having paid the compensation shall be subrogated to the rights of the injured employee to recover against that person. . . .That provision was subsequently amended, removing the reference to subrogation and substituting language allowing an employer either to intervene in an action brought by an employee or to bring its own direct action against athird party. See Public Acts 1917, c. 368, § 1. The language of the 1917 act is virtually identical to that of the current § 31-293 (a). . . .This legislative history, in addition to the plain language of the statute, makes clear that, under § 31-293 (a), an employer has a cause of action that is separate and distinct from that of its injured employee. [An employer's] cause of action, therefore, although derivative of [the employee's], belongs exclusively to [the employer], and [the employer] has an independent statutory right to assert a claim for reimbursement." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 469.
Accordingly, under General Statutes § 31-293 (a) "an employer has a general right to be reimbursed from a third party tortfeasor for benefits paid to an employee for injuries caused by the third party. . . .By allowing . . . an employer . . . to bring an action, the law seeks to vindicate . . . the employer's interest in being reimbursed for payments made because of the third party's malfeasance." (Internal quotation marks omitted.) Libby v. Goodwin Pontiac-GMC Truck, Inc., supra,241 Conn. 175-76.
Further, General Statutes § 31-293 (a) also "provides that: No compromise with the [tortfeasor] by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. . . .Such language makes clear that the employer and employee have separate rights under the statute." (Internal quotation marks omitted.) Doucette v. Pomes, supra, 247 Conn. 468. Where an employer, responsible for the payment of workers compensation benefits to an injured employee, does not assent to any compromise between that employee CT Page 2635 and an alleged third-party tortfeasor, the employer is entitled to maintain its own action, pursuant to General Statutes § 31-293, in order to seek a determination of the legal liability of alleged third-party tortfeasor. See Red Star Express of Auburn, Inc. v. Carsno, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 366437 (November 30, 1990, Hennessey, J.). As explained inSnagg v. Eastman, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 266907 (July 28, 1992, Melville, J.) (7 Conn.L.Rptr. 172, 173), "[W]hen an employee independently settles his claim with a third party, the employer retains an independent right of action for reimbursement against the third party." Id.
"General Statutes § 31-293 (a) should not be construed in any manner that serves to undercut the legislative intention manifested by a grant of independent rights to the employer and employee. See Turner v.Turner, 219 Conn. 703, 712, 595 A.2d 297 (1991) (the court must construe statute in a way that will not violate its intended purpose or create bizarre results). It would be illogical to construe General Statutes § 31-293 (a) in a way that renders an . . . employer's rights dependent upon the absence or presence of the employee, whereby the employee may withdraw from the action after settlement and thereby deprive the intervening employer of its statutory right to reimbursement.
"Therefore, when the plaintiff-employee settles . . . [the employer] who does not assent to such settlement retains a continuing right of action against the [alleged] tortfeasor . . . Moreover, such a statutory construction fosters settlement without jeopardizing the independent rights of action vested in the parties under the statute. See General Statutes 31-293 (a)." Id. The plaintiffs, here, are not seeking double recovery as is argued by the defendant. They are merely seeking to pursue their statutory right to reimbursement for all workers' compensation benefits paid to Pendergast, allegedly due to the defendant's negligence. A double recovery would not be possible where the plaintiffs have yet to be reimbursed, in toto, for their costs. Such an argument seems illogical, for how can one be double dipping if he has not been reimbursed? The court agrees that the plaintiffs may not, again, recover those funds already recovered, but they have experienced $18,286.36 more in workers' compensation liability than that for which they have been reimbursed, and Pendergast's workers' compensation claim still remains open. To bar recovery of that amount, simply because the plaintiffs have received a small reimbursement already, due to the defendant's settlement with Pendergast, in which the plaintiffs did not partake, would be contrary to the legislative intent expressed in the history of the Workers' Compensation Act. See DoucetteCT Page 2636v. Pomes, supra, 247 Conn. 468-69. Compare 1913 Public Acts, c. 138, part B, § 6, with Public Acts 1917, c. 368, § 1.
Accordingly, the defendant's motion for summary judgment is denied.
Foley, J.